OF THE
STATE OF DELAWARE

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: January 8, 2026
Date Decided: January 30, 2026

Matthew F. Davis, Esq.
Justin T. Hymes, Esq.
Potter Anderson & Corroon LLP
1313 N. Market St.
Wilmington, DE 19801

Laura Tyler Perryman
c/o Hazelton SFF BOP
PO Box 3000
Bruceton Mills, WV 26525

RE: *Curonix LLC v. Laura Tyler Perryman*,
C.A. No. 2019-1003-BWD

Dear Counsel and Litigants:

This letter opinion resolves Ms. Perryman's motion to dismiss the operative

second amended complaint in this action. For the reasons explained below, the

motion is denied.

## I.      BACKGROUND[1]

### A.      Perryman Founds Stimwave And Then Later Resigns As CEO.

In 2010, defendant Laura Tyler Perryman founded Stimwave Technologies

Incorporated ("Stimwave" or the "Company"), a Delaware corporation, to develop,

manufacture, and commercialize neurostimulators that treat patients suffering from

---

[1] The following facts are taken from the Verified Second Amended and Supplemented
Complaint (the "Second Amended Complaint") and the exhibits attached thereto. Verified
Second Am. and Suppl. Compl. [hereinafter SAC], Dkt. 642.

chronic pain. SAC ¶¶ 10, 19–20. In 2013, Perryman also founded several other entities that operated as subsidiaries in the Company's corporate structure, including Micron Devices, LLC ("Micron"), a Delaware limited liability company, and StimQ Medical LLC ("StimQ"), a Bahamian entity. *Id.* ¶¶ 18, 20. Perryman caused the Company to transfer patents and other intellectual property ("IP") to Micron, which then licensed the IP back to the Company and StimQ under certain contracts. *Id.* ¶ 21.

On March 25, 2018, on behalf of the Company's subsidiaries, Perryman executed the Stimwave Technologies Incorporated Contribution Agreement (the "Contribution Agreement"), under which Micron transferred its ownership interests in StimQ to the Company. *Id.* ¶ 31; *id.*, Ex. A. Then, on December 31, Perryman orchestrated additional equity transfers that increased the Company's ownership stake in StimQ through another agreement (the "Security Exchange Agreement"). SAC ¶¶ 34–35; *id.*, Ex. B. Because some of the subsidiaries that executed the transfers under the Contribution Agreement and the Security Exchange Agreement are organized under Bahamian law, certain administrative documents were required to effectuate them (the "Bahamian Registration Documentation"). *See* SAC ¶ 131.

To consolidate the Company's corporate structure, Perryman caused Micron to assign its IP and related contracts to the Company in late 2018 and early 2019, signing several patent and asset assignments on behalf of Micron and the Company (the "Micron Assignment Agreements"). *Id.* ¶¶ 40–42, 47; *id.*, Exs. C–D, H; *see id.*, Ex. G at 28. After the Micron Assignment Agreements, Micron served no remaining purpose, and on December 28, 2018, Perryman executed and filed a Certificate of Cancellation for Micron with the Delaware Secretary of State. SAC ¶ 43; *id.*, Ex. E.

Less than a year later, in October 2019, the Company received a civil investigation demand from the United States Department of Justice. SAC ¶ 55. In response to the demand, the Company undertook an internal investigation into allegations that Perryman improperly used Company assets and hid these activities by ordering accounting staff to forge invoice references on customers' checks. *Id.* ¶¶ 55–59. On November 14, the Company's board of directors placed Perryman on leave, after which she resigned as CEO. *Id.* ¶¶ 62–63, 73; *id.*, Ex. M.

After her resignation, Perryman allegedly engaged in a series of actions to undermine the Company and take back control. For example, Perryman advanced "a false narrative that Micron [] never transferred" its IP to the Company. SAC ¶ 79. To facilitate this narrative, Perryman filed a Certificate of Correction for Micron's Certificate of Cancellation with the Delaware Secretary of State, which

purported "to render the Certificate of Cancellation 'null and void' on the basis that

'[d]ue to a clerical error, [Micron] was voluntarily cancelled when it should not have

been.'" *Id.* ¶ 84. Perryman then purported to cause Micron to assign the IP

previously assigned to the Company to a different entity. *Id.* ¶¶ 89–92.

###### B. The Company And Perryman Engage In Protracted Litigation Across Multiple Courts.

On December 16, the Company initiated this action through the filing of a

Verified Complaint (the "Initial Complaint"), alleging claims against Perryman, her

husband Gary Perryman, Micron, and Stimguard Medical Corporation. Verified

Compl. [hereinafter Initial Compl.] ¶¶ 186–222, Dkt. 1.

The Company amended the Initial Complaint on February 21, 2020 (the "First

Amended Complaint"), adding additional defendants. Verified Am. Compl.,

Dkt. 88. On March 6, the defendants, including Perryman, filed an answer and

counterclaims, which they amended on July 21 and August 28.[2]

On December 7, Perryman caused Micron to initiate bankruptcy proceedings

in the United States Bankruptcy Court for the Southern District of Florida (the

---

[2] Defs.' Answer to the Verified Am. Compl. and Verified Countercls. [hereinafter Countercls.], Dkt. 106; Defs.' Answer to the Verified Am. Compl. and Am. Verified Countercls., Dkt. 166; Defs.' Answer to the Verified Am. Compl. and Second Am. Verified Countercls. [hereinafter Second Am. Countercls.], Dkt. 257.

"Micron Bankruptcy"). SAC ¶ 111; Suggestion of Bankr., Dkt. 395; *see In re Micron Devices LLC*, Case No. 20-23359 (LMI) (Bankr. S.D. Fla.). Following an evidentiary hearing, on May 20, 2021, the United States Bankruptcy Court for the Southern District of Florida approved a settlement among the Company, creditors, and the bankruptcy trustee which provided that (among other things) the Contribution Agreement and the Micron Assignment Agreements were valid and enforceable agreements (the "Settlement Approval Order"). SAC ¶ 114.[3]

On June 15, 2022, the Company initiated bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware. *See In re Stimwave Tech. Inc., et al.*, Case No. 22-10541 (KBO) (Bankr. D. Del.); SAC ¶ 124. Perryman continued to assert that the Contribution Agreement and the Micron Assignment Agreements were unenforceable such that the Company did not own the IP it claimed, nor the ownership interests in StimQ. SAC ¶¶ 124–25. On September 30, the United States Bankruptcy Court for the District of Delaware approved an Asset Purchase Agreement (the "APA") under which the Company sold assets to Curonix LLC ("Plaintiff"), a Delaware limited liability company, over an objection by an

---

[3] Perryman opposed the Settlement Approval Order, and the United States Bankruptcy Court for the Southern District of Florida later sanctioned her "bad faith conduct," which included "frivolous and baseless pleadings." SAC ¶¶ 116–18.

entity controlled by Perryman. *Id.* ¶ 126. Under the APA, Plaintiff acquired the Company's rights, claims, and assets, which included "all record and beneficial ownership in Equity Interests owned by [the Company] . . . including [equity interests in] [StimQ]." *Id.* As a condition of the APA, all equity interests "shall have been validly registered under applicable law," but StimQ minority equity holders have claimed that shares under the Contribution Agreement and the Security Exchange Agreement were never properly registered under Bahamian law. *Id.* ¶¶ 127–29.

On March 6, 2024, Perryman was convicted of health care fraud, conspiracy to commit health care fraud, and wire fraud, and was later sentenced to 72 months in federal prison. *See United States v. Perryman*, No. 23-cr-117 (S.D.N.Y. 2023); Ltr. Providing a Status Update at 3, Dkt. 633.

### C.     The Plaintiff Is Substituted In This Action.

Following Plaintiff's purchase of the Company's assets under the APA, Plaintiff moved in this action to substitute itself as plaintiff in place of the Company and for leave to amend the First Amended Complaint. Dkts. 575–576. This action was reassigned to me on January 8, 2025. Dkt. 637. On January 10, the Court granted Plaintiff leave to amend the First Amended Complaint and substitute itself

in as plaintiff, and on February 17, Plaintiff filed the Second Amended Complaint.

*See* Dkts. 638, 642.

The Second Amended Complaint alleges six claims against Perryman, Stimguard Medical Corporation (a Delaware corporation), Stimguard Medical Corporation (a Florida corporation), Stimguard LLC (a Florida limited liability company), LTP Limited, LLC (a Bahamian entity), and Micron Medical LLC (a Bahamian entity; collectively, the "Entity Defendants"). *See* SAC at 1. Count I seeks a declaratory judgment that the Micron Assignment Agreements are valid and binding in accordance with the Settlement Approval Order. *Id.* ¶¶ 132–40. Count II seeks a declaratory judgment that the Contribution Agreement is valid and binding in accordance with the Settlement Approval Order such that Plaintiff is the rightful owner of the StimQ equity interests transferred thereunder. *Id.* ¶¶ 141–45. Count III alleges a claim for breach of the Contribution Agreement for failing to register the shares transferred therein under Bahamian law and seeks specific performance of the Bahamian Registration Documentation. *Id.* ¶¶ 146–53. Count IV seeks a declaratory judgment that the Security Exchange Agreement is valid such that Plaintiff is the rightful owner of all shares transferred therein. *Id.* ¶¶ 154–60. Count V seeks equitable relief requiring Perryman to execute and deliver the Bahamian Registration Documentation. *Id.* ¶¶ 161–67. Count VI alleges a claim for malicious

prosecution against Perryman for her conduct in this action and in the prior bankruptcy proceedings. *Id.* ¶¶ 168–76.

On June 20, 2025, Plaintiff moved for default judgment against Perryman and the Entity Defendants. Dkt. 664. After a hearing was held on July 25, the Court entered default judgment against the Entity Defendants on August 21. Dkts. 667, 669. Only Counts I, IV, V, and VI of the Second Amended Complaint against Perryman remain.

On September 30, Perryman, acting *pro se*, filed a motion to dismiss the Second Amended Complaint (the "Motion to Dismiss") under Court of Chancery Rules 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6). Def. Laura Perryman's Mot. to Dismiss the Am. Compl. (and Opening Br. in Supp.) [hereinafter DOB], Dkt. 680. Plaintiff filed an answering brief in opposition to the Motion to Dismiss on November 13, while also moving to strike (the "Motion to Strike") the Motion to Dismiss, asserting that the Motion to Dismiss was drafted by a nonlawyer family member rather than Perryman herself. Pl.'s Omnibus Br. in Supp. of Pl.'s Mot. to Strike and in Opp'n to Def. Laura Tyler Perryman's Mot. to Dismiss [hereinafter PAB], Dkt. 686. Briefing concluded on January 8, 2026.[4]

---

[4] Perryman filed a reply in further support of the Motion to Dismiss on January 6, as well as a letter responding to the Motion to Strike. Reply to Opp'n to Def.'s Mot. to Dismiss

## II.      ANALYSIS

Perryman has moved to dismiss the Second Amended Complaint under Court

of Chancery Rules 12(b)(2) for lack of personal jurisdiction, 12(b)(4) and 12(b)(5)

for insufficient process and service of process, and 12(b)(6) for failure to state a

claim.[5]   For the reasons explained below, the Motion to Dismiss is denied in its

entirety.

### A.      The Motion To Dismiss For Lack Of Personal Jurisdiction Is Denied.

Perryman first moves to dismiss the Second Amended Complaint on grounds

that the Court lacks personal jurisdiction over her.  DOB at 5.

"The personal jurisdiction defense may be lost by failure to assert it

seasonably, by formal submission in a cause, or by submission through conduct."

*Est. of Mergenthaler*, 2024 WL 4052994, at *3 (Del. Ch. Sep. 4, 2024) (quoting *In

re Asbestos Litig.*, 2015 WL 556434, at *4 (Del. Super. Jan. 30, 2015)).  A defendant

must assert a personal jurisdiction defense "by motion filed before a responsive

---

the Second Am. Compl. [hereinafter DRB], Dkt. 692; Ltr. to the Court, Dkt. 691.  On January 8, Plaintiff filed a reply brief in further support of the Motion to Strike.  Reply Br. in Further Supp. of Pl.'s Mot. to Strike, Dkt. 694.

[5] Although Perryman cites to the Federal Rules of Civil Procedure as the basis for her Motion to Dismiss, I evaluate her arguments under the Court of Chancery Rules.  *See* DOB at 2–3; Fed. R. Civ. P. 12(b)(2), (4)–(6).

pleading" or "in a responsive pleading or in an amendment to the responsive pleading." Ct. Ch. R. 12(h)(2)(A)–(B); *see also CelestialRX Invs., LLC v. Krivulka*, 2019 WL 1396764, at *17 (Del. Ch. Mar. 27, 2019) ("According to Court of Chancery Rule 12(h), a defense of lack of personal jurisdiction is waived if not made in a timely Rule 12 motion or in the first responsive pleading.").

Perryman failed to raise a personal jurisdiction defense in her answer to the First Amended Complaint,[6] filed her own counterclaims in this Court seeking a declaration that the Micron Assignment Agreements and the Security Exchange Agreement are not binding contracts,[7] and participated in this litigation over the course of six years. Through such conduct, Plaintiff "built up a reasonable expectation" that Perryman would defend the suit in Delaware. *Bouchard v. Braidy Indus., Inc.*, 2020 WL 2036601, at *10 (Del. Ch. Apr. 28, 2020) (quoting *Salud Nat. Entrepreneur, Inc. v. Nutricento Internacional, Inc.*, 2011 WL 290271, at *3 (N.D. Ill. Jan. 27, 2011)). Because Perryman waived the defense through six years of

---

[6] *See* Countercls.; *see also Plummer v. Sherman*, 861 A.2d 1238, 1244 (Del. 2004) ("[Defendant] was required to expressly raise the defense of lack of personal jurisdiction no later than her answer, but she did not do so.").

[7] Second Am. Countercls. ¶¶ 249–62, 276–80; *see Lynch v. Gonzalez Gonzalez*, 2020 WL 3422399, at *8 (Del. Ch. June 22, 2020) ("Filing suit in Delaware gives rise to specific jurisdiction over the filing party with respect to actions arising from the transaction underlying the suit.").

litigation conduct, her motion to dismiss for lack of personal jurisdiction must be denied.

**B.    The Motion To Dismiss For Insufficient Process And Service Of Process Is Denied.**

Perryman next argues that the Second Amended Complaint must be dismissed because she was not properly served. DOB at 3. As the docket in this action reflects, however, service was proper.

In accordance with Court of Chancery Rule 4(e), the Company served Perryman with a summons and the Initial Complaint on December 18, 2019. Service was accomplished by the Register in Chancery via registered mail. *See* 10 *Del. C.* § 3114; Ct. Ch. R. 4(e)(4) ("Within the time required by the consent statute, the Register in Chancery must mail a copy of the summons as prescribed by the statute."); Register's Certificate of Registered Mailings, Dkt. 20. Thereafter, Perryman appeared and participated in the action.

In accordance with Court of Chancery Rule 5(b)(2)(D), Plaintiff served Perryman with the Second Amended Complaint on March 25, 2025. Service was accomplished by mailing to Perryman's last known address, a federal prison. *See* Ct. Ch. R. 5(b)(2)(D) ("A paper is served under this rule by: . . . (D) mailing it to the person's last-known address—in which event service is complete upon mailing."); Aff. of Service of Verified Second Am. and Suppl. Compl., Dkt. 685.

Although Perryman claims that she never received a copy of the Second Amended Complaint from the prison, Plaintiff's affidavit of service demonstrates that service was properly effectuated under the Court rules. Perryman's Motion to Dismiss also demonstrates that she is, in fact, familiar with the allegations in the Second Amended Complaint. Perryman's motion to dismiss for insufficient process and service of process is therefore denied.

### C.    The Motion To Dismiss For Failure To State A Claim Is Denied.

Perryman also argues that the Second Amended Complaint fails to state a claim upon which relief can be granted. DOB at 8.

When reviewing a motion to dismiss under Court of Chancery Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

Aside from claiming that the Second Amended Complaint is "[c]onclusory or speculative"—itself a wholly conclusory argument—Perryman does not explain why, accepting the truth of the allegations therein, the Second Amended Complaint

fails to support the relief Plaintiff seeks. Upon review of the pleading, I find that the Second Amended Complaint alleges sufficient facts to support a claim for relief.

In her reply brief, Perryman argues that she is not a party to any enforceable agreement and relief is unavailable because there is no "concrete and immediate controversy." DRB at 5–6. The Second Amended Complaint pleads sufficient facts to support Plaintiff's request for a declaration that the Micron Assignment Agreements and the Security Exchange Agreement are binding contracts, and that Perryman has improperly disputed their enforceability. *See, e.g.*, SAC ¶ 138 ("[Perryman] continue[s] to dispute Plaintiff's right, title, and interest in the . . . IP . . . ."); *id.* ¶ 157 ("Perryman asserts that . . . [the] shares were not validly transferred to [the Company] pursuant to the Security Exchange Agreement."); *id.* ¶ 173 ("Perryman's actions have significantly harmed [the Company and Plaintiff] by forcing it to repeatedly incur expenses, including attorney's fees and costs, to defend itself and its property interests against Perryman's malicious litigation.").

Perryman also makes several arguments concerning the Second Amended Complaint's failure to plead a fraud claim with the particularity required under Court of Chancery Rule 9(b). DOB at 9. These arguments lack merit because the Second

Amended Complaint does not allege any claims sounding in fraud.[8]  *See* SAC; PAB at 14 ("[T]here is no claim for fraud asserted in the SAC, or any of the prior complaints filed in this action.").  Perryman's motion to dismiss for failure to state a claim is denied.

### D.     The Claims Pled In The Second Amended Complaint Are Timely.

Finally, Perryman argues that claims arising from events that occurred between 2017 and 2019—more than three years before the Second Amended Complaint was filed—are time-barred.  DOB at 11–13.

Plaintiff's claims arising from conduct in 2017 through 2019 are not time-barred because they relate back to the Initial Complaint.  Under Court of Chancery Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Ct. Ch. R. 15(c)(2).

The claims in the Second Amended Complaint relate back to the Initial Complaint because they are based on the same allegedly improper conduct and series

---

[8] Perryman also moves for a more definite statement under Court of Chancery Rule 12(e) based on a purported failure to plead fraud with particularity.  DOB at 14.  Because the Second Amended Complaint does not allege claims for fraud, this aspect of Perryman's motion is likewise denied.

of transactions that formed the basis of the Initial Complaint.  New Count I seeks a declaration that was also sought in Count IV of the Initial Complaint.  New Count IV concerns the Security Exchange Agreement through which Perryman and other defendants allegedly transferred interests in StimQ to Stimwave; Paragraphs 22, 32, 154, and 197 (among others) of the Initial Complaint similarly set out the parties' dispute over control of StimQ.  *See, e.g.*, Initial Compl. ¶¶ 22, 32, 154, 197.  Although "[t]he factual allegations in the two complaints are slightly different, . . . those differences reflect only a greater access to information at the time of the [Second Amended Complaint]."  *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 972 (Del. Ch. 2001).

The Second Amended Complaint also adds a new claim for malicious prosecution, which is subject to a three-year statute of limitations.  *See* 10 *Del. C.* § 8106; *Winshall v. Viacom Int'l, Inc.*, 2019 WL 960213, at \*18 (Del. Super. Feb. 25, 2019) (holding that Section 8106 governs claims for malicious prosecution).  Plaintiff's malicious prosecution claim is based on conduct that occurred between December 2020 and December 2022.  PAB at 16.  Plaintiff moved to amend to add this claim on December 19, 2022, well within the limitations period.  *See Cirillo Family Tr. v. Moezinia*, 2018 WL 3388398, at \*19 n.176 (Del. Ch. July 11, 2018) (holding claims were timely where the plaintiff moved to amend within the

limitations period).  Because Plaintiff's claims are timely, Perryman's motion to

dismiss on this basis is likewise denied.[9]

## III.   CONCLUSION

For the reasons explained above, the Motion to Dismiss is DENIED.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:   All counsel of record (by File & ServeXpress)

---

[9] Because the Motion to Dismiss is denied on the merits, the Court need not resolve the Motion to Strike.